IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TIMMY A. TAYLOR and DEBORAH TAYLOR, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 4:09-cv-536 HEA |
| | ) | |
| COTTRELL, INC. and AUTO HANDLING, CORP., | ) | Removed from the Circuit Court of St. Louis County, MO (Case No. 09SL-CC01525) |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COTTRELL, INC.'S TRIAL BRIEF

### INTRODUCTION

Cottrell submits the following Trial Brief to address the choice of law issue for this case, and to show how the Court's prior analysis in <u>Stanley</u> requires Indiana law to apply to both claims. As the Court is aware, this case (as of now) addresses two claims: (1) a 2007 incident that occurred in Indiana involving a tie down bar; and (2) a 2010 alleged fall that occurred in Illinois, while plaintiff's chosen home terminal was in Indiana and his Cottrell rig was assigned out of his chosen Indiana home terminal.

Based on the Court's analysis and rationale in <u>Stanley</u>, it is clear that Indiana law should apply to both claims, although the pending Motions *in Limine* should exclude any evidence of the 2010 incident. In <u>Stanley</u>, the Court applied Missouri law primarily because (1) the incident occurred in Missouri; and (2) the rig was assigned out of a Missouri terminal where plaintiff chose to work. Here, the same issues bode in favor of Indiana law for both claims, which will also simplify the issues for the jury, Court and parties.

## ARGUMENT

The following is from the Court's recent Stanley opinion: Federal district courts sitting in diversity generally apply the choice-of-law rules of the forum state. Global Petromarine v. G.T. Sales and Mfg., Inc, 577 F.3d 839, 844 (8th Cir. 2009). Missouri's choice of law rules have evolved over the decades. Prior to the Missouri Supreme Court's 1969 decision in Kennedy v. Dixon, Missouri courts used the *lex loci delicti* rule, applying the law of the state where the tort occurred. Kennedy v. Dixon, 439 S.W.2d 173, 181 (Mo. 1964). In Kennedy, the Missouri Supreme Court abandoned that rule, embracing instead the significant relationship test of the Restatement (Second) of Conflicts of Law. Kennedy v. Dixon, 439 S.W.2d 173, 184 (1969), Global Petromarine, 577 F.3d at 844. Section 145 of the Restatement establishes the general rule for all torts: that the rights and liabilities of the parties should be determined by the law of the state with the most significant relationship to the parties and the accident. Restatement §145(1).

The significant relationship test of Restatement §146 provides the rule for personal injury: In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in §6 to the occurrence and the parties, in which event the local law of the other state will be applied. Restatement § 146. The test embodies a rebuttable presumption in favor of applying the law of the state where the injury occurred, absent an overriding interest of another state. Dorman v. Emerson Elec. Co., 23 F.3d 1354, 1358 (8th Cir. 1994) (explaining and applying Missouri choice-of-law rules).

In deciding such an overriding interest exists, courts must evaluate the §6 factors, taking into account the contacts listed in §145 according to their relative importance to the issue.

Dorman, 23 F.3d at 1358. Under § 145, the contacts to be taken into account are (a) the place where the injury occurred (b) the place where the conduct causing the injury occurred (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. Restatement § 145(2). Under Missouri law, it is the quality of the contacts that matter, not their quantity. Dorman, 23 F.3d at 1359. If the determination of which state has the most significant relationship is unclear, the trial court should apply the law of the place where the injury occurred. Id.

It is clear, based on these factors, as applied to the facts below, that Indiana law must apply to both claims.

## THE 2007 ACCIDENT

Plaintiff is a citizen of Oklahoma. His 2007 incident and alleged injury occurred in Indiana. See 1.5.10 Taylor at 81, Ex. 1. The one post-occurrence witness, Mr. Peluso, was also in Indiana that day. Plaintiff was securing pickup trucks manufactured at the GM facility in Ft. Wayne, Indiana. Of course, the Cottrell rig was manufactured in Georgia.

Plaintiff's home terminal in 2007 was Arlington, Texas, and his rig he used was assigned out of the Arlington, Texas terminal. Id. at 197. At the time of the accident, he was on a temporary, 30-day transfer to the Wentzville, Missouri terminal, but his rig was an Arlington, Texas rig. See 5.13.10 Taylor at 12, Ex. 2. He had been working about 10 days on his temporary, 30-day transfer to Wentzville. Id. He had both his shoulder and neck surgery in Oklahoma from Dr. Odor and Dr. Olsen.

Accordingly, given the multitude of states (Oklahoma, Georgia, Texas, Missouri, and Indiana), no state has a more significant relationship to the first incident than the state of the

accident and alleged injury, Indiana. The presumption of the law of the state of the accident applying, as discussed in the Stanley Order on choice of law, thus applies. Indiana law should apply to this claim. As discussed next, Indiana law should also apply to the 2010 incident, if it is still in the case.

## THE 2010 INCIDENT

At the time of the 2010 incident in Illinois, plaintiff's home terminal was in Greensburg, Indiana. See 4.13.11 Taylor at 183, Ex. 3. ("Q. And you were working out of the Indiana terminal at the time of your accident? A. Yes"); See 5.13.10 at 39, Ex. 2. ("Q. Okay. And did Greensburg, Indiana, then become your home terminal? A. Yes.") His rig was assigned out of the Greensburg, Indiana terminal. He had just bid on the Indiana Cottrell rig he was using at the time of the accident a few months earlier. See 4.13.11 at 177, Ex. 3. ("Q. And you had had that particular rig for how long? A. We had just bidded trucks before that. So I would say a month or two probably. I couldn't tell you exactly.")

In Stanley, the Court noted: "At the time of the accident, Plaintiff was based out of the Missouri terminal – the home terminal of the Cottrell rig." See Stanley Order at 6, Ex. 4. Here, at the time of the 2010 incident, plaintiff was based out of the Indiana terminal -- the home terminal of the Cottrell rig.

After returning to work in 2008 after the 2007 incident, and before the 2010 incident, he volunteered for permanent transfer to the Greensburg, Indiana terminal. See 5.13.10 at 40, Ex. 2. ("Q. And you were willing to transfer to Greensburg, Indiana? A. Yes"). In Stanley, the Court stated: "He could have changed his base to Indiana and used a different rig there, but instead he chose to stay in Missouri and continue to use the Cottrell rig." See Stanley at 7, Ex. 4. Here,

4

plaintiff chose to transfer *to Indiana* and used and bid on Cottrell rig assigned *to Indiana*. The facts are thus the opposite of Stanley in this regard and favor Indiana.

The evidence here shows that the location of the second injury in Illinois was fortuitous. The Court in Stanley noted: "the place of the injury is unimportant to the selection of the applicable law if it is fortuitous in that it bears little relation to the occurrence and the parties." Id. at 8, citing Dorman 23 F.3d at 1360. Here, unlike in Stanley, Indiana is where plaintiff chose to work and to be permanently assigned and where his rig was domiciled. It is where he bid for the rig he was using just a few months earlier. It is also where the load of Civics he was delivering that day originated, being manufactured in Indiana.

As for Illinois and its fortuity, Plaintiff testified that Illinois played no role in his accident, and it is important to note that he has alleged a "design defect" case against the trailer that follows the rig wherever it goes. Mr. Taylor's testimony disavowing the role of Illinois was more direct than Mr. Stanley's answer stating he "imagined" it could have happened anywhere. Mr. Taylor testified:

> Q. Now, with regard to your accident that happened in Illinois that day, was there anything about the weather conditions in Illinois that day that you believe caused your accident?
>
> A. No.
>
> Q. Was there anything about the premises of the dealership or that road there in Illinois that you believe caused or contributed to cause your accident?
>
> A. No.
>
> Q. Was there anything that happened in the State of Illinois that day that you believe caused or contributed to cause your accident?
>
> A. No, sir.

5

See 4.13.11 Taylor at 235, Ex. 3. His testimony is thus far stronger than Stanley's in this regard where he said he could "imagine" it could happen elsewhere. Further, the voluntary decision to work out of Indiana supports application of Indiana law.

In Stanley, the Court stated: "This injury actually happened in Missouri, because of the actions taken above: primarily, Plaintiff's decision to work from a Missouri terminal which required his use of a Cottrell flat-top rig, and his frequent trips to Missouri dealerships with the allegedly unsafe rig." See Stanley Order at 8, Ex. 4. Here, plaintiff's decision was to work from an Indiana terminal where he bid on a Cottrell rig assigned out of Indiana. He thus chose to have his primary load be Hondas manufactured in Greensburg, Indiana, which are what he was delivering in the Chicago area at the time of his incident -- Indiana-built Civics. He voluntarily chose to have his home base be in Indiana – like Mr. Stanley chose Missouri.

He received his DOT physical in an Indiana clinic on November 7, 2008 and reported no "chronic back pain" and passed it. See 11.7.08 DOT Physical, Ex. 5; see also 4.13.11 Taylor at 244, Ex. 3. He then returned to the same Indiana clinic 12 days later and reported "chronic back pain." See 11.19.08 Decatur, Indiana Record, Ex. 6. In those 12 days, he worked out of the Indiana terminal using Boydstun rigs assigned out of the Indiana terminal, not Cottrell rigs.

He then treated for low-back issues from November 2008 to June 2009, first in Indiana, then in Oklahoma.

After returning to work after those seven months off from November 2008 to June 2009, his home terminal was still his chosen one of Indiana in June 2009. He then bid on and chose the Cottrell rig at issue for the 2010 incident, which was assigned out of the Indiana terminal. See 4.13.11 Taylor at 183, Ex. 3.

The Honda Civics he delivered in Illinois were all manufactured and loaded at his home terminal in Greensburg, Indiana. Id. at 184. ("Q. Is that where your load originated, was at the Indiana Honda facility? A. Yes.")

Thus, the Stanley analysis bodes in favor of Indiana law for both claims, which will also streamline and simplify the case, rather than having two different states' laws applying to the case. The fact that plaintiff chose to work out of Indiana and his Cottrell rig was an Indiana rig, combined with the other factors above, including plaintiff's unequivocal testimony on fortuity, show the presumption of *lex loci* is overcome. As for confusion and streamlining issues, Indiana and Illinois, for example, differ on (1) the standard for determining defect (consumer expectations vs. risk utility); (2) whether assumption of the risk is a complete defense; (3) the allowance of non-parties at fault on the verdict form for fault assessment purposes; (4) the type and amount of damages, including punitives, that are recoverable; and (5) whether 51 percent fault bars recovery.

The complications involved in applying two different state's laws to the claims would make proofs more difficult, jury instructions more complicated and contradictory, and risk confusing the jury. Illinois has no connection at all to the first incident in Indiana, and Illinois is, based on this record, fortuitous, when the Court's Stanley rationale is applied to the facts of the second incident. Illinois simply has no interest in its laws applying to a claim of an Oklahoma citizen -- who chose to work out of Indiana, using an Indiana Cottrell rig -- against a Georgia and Missouri company.

The Court should thus apply Indiana law to both claims.

Respectfully submitted:

ARMSTRONG TEASDALE LLP

/s/ Daniel J. Carpenter
Daniel J. Carpenter, #41571MO
Amy Lorenz-Moser, #49791MO
7700 Forsyth Blvd., Suite 1800
St. Louis, MO 63105
Telephone: (314) 621-5070
Facsimile: (314) 621-5065
dcarpenter@armstrongteasdale.com
alorenzmoser@armstrongteasdale.com

*Attorneys for Defendant Cottrell, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of March, 2014, a copy of the foregoing was was electronically filed with the Court, and will be sent electronically by the Court to the following:

| Brian M. Wendler<br>Wendler Law, P.C.<br>900 Hillsboro, Suite 10<br>Edwardsville, IL 62025 |
|---|
| Charles Armbruster, III<br>Michael Blotevogel<br>Armbruster Dripps Winterscheidt & Blotevogel, LLC<br>219 Pisa Street<br>Alton, IL 62002<br>***Attorneys for Plaintiffs*** |
| Paul Wickens<br>William Logan<br>Foland, Wickens, Eisfelder, Roper & Hofer, P.C.<br>911 Main Street, Suite 3000<br>Kansas City, MO 64105<br>***Attorneys for Defendant Auto Handling Corporation*** |

/s/ Daniel J. Carpenter